JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusion that the judicial statements objected to in this case were not impermissible comments on the evidence.
*207 I dissent from that part of the majority opinion which concludes that the jury was properly instructed and that plaintiff was not prejudiced by the instructions given to the jury.
The majority relies on our decisions in Rogers v. Hilger Chevrolet Co. (1970), 155 Mont. 1, 465 P.2d 834, and Kopischke v. First Continental Corp. (1980), 187 Mont. 471, 610 P.2d 668, to support its conclusion that Jury Instruction No. 17 was appropriate. However, neither of these cases were concerned with the appropriateness of similar language in an instruction to the jury. Therefore, they are not authority for the majority’s conclusion.
It is true that in Rogers, this Court included, in dictum, the language complained of by plaintiff. It is also true that that loose language was repeated in a lengthy discussion of used car dealers’ duties found in Kopischke. However, the mere fact that the language was included in discussions found in prior cases does not make it the proper substance of a jury instruction. In fact, by including that language, the District Court disregarded our clear admonition in Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 333, 588 P.2d 493, 509, where we stated that:
Another problem that this Court frequently confronts is that counsel or the trial bench too often draft instructions in the literal language of the opinions of this Court or the courts of other jurisdictions. While occasionally a statement in an opinion may also be a good jury instruction, we emphasize that opinions are not designed to be jury instructions. We are confident that the trial bench, together with counsel, if they take sufficient time and effort, can draft instructions that are better jury guides to the law than the literal language taken from court opinions. We encourage the bench and the bar to take the time to do so.
In this case, the objectionable language was that part of Instruction No. 17 which stated that: “However, the used car dealers duty does not extend to completely dismantling an automobile and then reassembling it before its resale.”
That language constituted an inappropriate comment by the District Court on plaintiff’s claim and must surely have confused the jury regarding the nature of plaintiff’s claim. It was never plaintiff’s position that the defendant in this case had a duty to dismantle the automobile which it sold to plaintiff’s decedent, then inspect the disassembled parts and reassemble it before resale. It was simply plaintiff’s position that there was technology available which would *208 enable used car dealers to easily inspect for carbon monoxide leakage prior to the sale of used cars.
While the above comment may have been a correct statement of the law based on loose language found in Rogers and Kopischke, it had no relevance to the factual issues in this case, and in fact, implied to the jury that plaintiff’s claim was based on a duty which the law did not impose on defendant. It distracted the jury from the real issues which it should have been deciding, it was not supported by the evidence, and it should not have been given.
Even accurate statements of law should not be given to a jury where to do so creates an issue of fact unsupported by evidence and which would tend to mislead or divert the minds of the jurors from the real factual issues. See Diversified Management, Inc. v. Denver Post, Inc. (Colo. 1982), 653 P.2d 1103, 1110; Koehn v. R.D. Werner Co., Inc. (Colo. Ct. App. 1990), 809 P.2d 1045, 1049.
Jury Instruction No. 17 would have been more appropriately included in defendant’s final argument than in an instruction on the law given by the District Court. It was a perfect example of what we discussed in Hunsaker when we held that:
We note also that counsel frequently draft instructions at the last moment with little thought given as to whether they are fair and accurate statements of the law. They are frequently drafted from an adversary position and as a result they tend to unfairly benefit one of the adversaries. That is not the purpose of jury instructions. Jury instructions are no place to make final arguments. In addition to being easily understood, instructions should be a fair statement of the law and not slanted to the side of one adversary or the other.
Hunsaker, 588 P.2d at 509.
The error of giving Jury Instruction No. 17 was compounded by the District Court’s Instruction No. 25 which set forth the duty of plaintiff’s decedent. That instruction provided that the decedent had an unqualified duty to maintain her vehicle in a reasonably safe condition. It provided no exception where the defect was latent and undiscoverable, other than by dismantling her vehicle.
In other words, the combination of instructions numbered 17 and 25 placed a higher standard of care for inspection and maintenance of the subject vehicle on the unsophisticated consumer than on the defendant who engaged in the business of inspecting and selling vehicles and who employed a full-time mechanic to assist it in discovering and repairing defects. This result is the exact opposite of *209 the respective burdens that were established in Kopischke where we held that:
“The used car dealer is in a better position, by reason of his opportunity, than his average customer to discover what defects might exist in any particular car to make it a menace to the public. We are of the opinion it is not too harsh a rule to require these dealers to use reasonable care in inspecting used cars before resale to discover these defects, which the customer often cannot discover until too late.” Gaidry Motors v. Brannon [(Ky. 1953)], 268 S.W.2d [627] at 628-629.
Further,
“... expectations of quality and durability will be lower for used goods, commensurate with their age, appearance and price. However, safety of the general public demands that when a used motor vehicle, for example, is sold for use as a serviceable motor vehicle (and not as junk parts), absent special circumstances, the seller be responsible for safety defects whether known or unknown at time of sale, present while the machine was under his control. Otherwise, the buyer and the general public are bearing the enterprise liability stemming from introduction of the dangerously defective used vehicle onto the public highways. Public policy demands that the buyer receive a used chattel safe for the purpose intended (where no substantial change will occur prior to reaching the buyer or foreseeable consumer) ...[.]” Turner v. International Harvester Company [(1975)], 336 A.2d [62] at 69.
Kopischke, 610 P.2d at 674.
Other than Jury Instructions No. 17 and 25, and the court’s general standard of care instruction, there were no other instructions to the jury regarding the respective duties of the parties. Therefore, the effect of the court’s instructions was to tell the jury that plaintiff’s decedent was absolutely liable for the safety of her vehicle, but that the dealer, who was in a better position by reason of his training and facilities, was only liable for defects which were readily apparent.
The combination of these instructions did not, as suggested by the majority, create reasonable concurrent duties. They imposed a higher standard of care on this unsophisticated consumer than on the more knowledgeable dealer.
What has, in fact, occurred in this case is that opinion language related to specific facts from previous cases has been taken out of context and used to construct jury instructions which, when applied in the factual context of this case, totally distorted the respective *210 duties of the parties. The majority has unwittingly given its stamp of approval to this rearrangement of the tort law based on nothing more than the premise that if the language was included in prior decisions of this Court, it must be okay. I am anxious to see how they distinguish the next case that comes here under similar circumstances.
The effect of the court’s instructions and the majority’s opinion is to ignore traditional principles of negligence and the effect that a person’s knowledge and training has on the standard of care imposed. Therefore, I dissent from the majority opinion. For the reasons stated, I would reverse the judgment of the District Court and remand this case to the District Court for retrial with proper instructions to the jury.